UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ELIZABETH P.,[1]
on behalf of C.J.D.P., a minor,

        Plaintiff,

v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

        Defendant.

Case No. 1:23-cv-20531
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Elizabeth P. (hereinafter "Plaintiff") on behalf of C.J.D.P., her minor son (hereinafter "Claimant"), for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in these cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

The application for benefits, filed on July 29, 2019, alleges that Claimant has been disabled since the filing date. R. 63, 68, 129–38. The application was denied initially and upon reconsideration. R. 76–78, 88–90. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 91–94. ALJ Michelle Marcus held a hearing on April 29, 2022, at which Plaintiff appeared without the assistance of counsel[3] and testified. R. 23–54. In a decision dated May 16, 2022, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act from July 29, 2019, the date on which the application was filed, through the date of that decision. R. 12–18. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 25, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 20, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[4] On February 16, 2024, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

II.     LEGAL STANDARD

   A.      **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3] At the administrative hearing, Plaintiff affirmed her desire to proceed without counsel and waived legal representation. R. 12, 30–31. Plaintiff is proceeding before this Court without the assistance of counsel.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

Finally, as previously noted, Plaintiff in this case is proceeding without the assistance of counsel. Courts have a duty to liberally construe *pro se* litigants' filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 340 (3d Cir.

5

2011) ("Pro se pleadings are often submitted by individuals with limited skills and technical expertise in the law."). Despite this liberal construction, however, "unrepresented litigants are not relieved from the rules of procedure and the requirements of substantive law." *Parkell v. Danberg*, 833 F.3d 313, 324 n.6 (3d Cir. 2016) (citations omitted); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (stating that *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants") (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "While a court must construe a pro se litigant's pleadings liberally, it need not act as [her] advocate." *United States v. Peppers*, 482 F. App'x 702, 704 (3d Cir. 2012).

  **B.**  **Sequential Evaluation Process**

The Social Security Act establishes a three-step sequential evaluation process for determining whether a child is disabled within the meaning of the statute. 20 C.F.R. § 416.924(a)−(d). The claimant has the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b). If so, then the inquiry ends because the claimant is not disabled.

At step two, the ALJ decides whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the claimant does not have a medically determinable impairment, or if the claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the claimant is not disabled. *Id*. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment that meets or medically

or functionally equals the requirements of a Listing, and that also meets the duration requirement, the claimant is disabled. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.1526(a). When determining whether an impairment medically equals a listing, the ALJ considers all the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the [claimant's] impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A court determines whether a claimant's impairment "functionally equals" a Listing by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). To functionally equal a Listing, the claimant's impairment must result in "marked" limitations in two domains of functioning or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain occurs when the claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id*. A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*. An "extreme" limitation in a domain occurs when the claimant's impairment interferes very seriously with the claimant's ability to independently initiate, sustain,

7

or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). "Extreme" limitation also means a limitation that is "more than marked" and is the rating given to the worst limitations. *Id*. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. *Id*. An "extreme limitation" is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. *Id*.

Finally, the ALJ must use a "whole child" approach when determining whether a claimant's impairment is functionally equivalent to a Listing. SSR 09-1p, 2009 WL 396031 (Feb. 17, 2009). Under this approach, the ALJ starts the evaluation "by considering the child's functioning without considering the domains or individual impairments." *Id*. After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id*. An impairment "may have effects in more than one domain" and the ALJ must evaluate limitations caused by an impairment "in any affected domain(s)." *Id*. (quoting 20 C.F.R. § 416.926a(c)). Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id*. "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id*.

### III. ALJ DECISION AND APPELLATE ISSUES

Claimant was 8 years old on his alleged disability onset date. R. 13 (reflecting Claimant's date of birth and noting that he was a school-age child on July 29, 2019, the date on which the application was filed and remained a school-age child at the time of the decision).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since July 29, 2019, the application date. *Id*.

At step two, the ALJ found that Claimant suffered from the following severe impairments: specific learning disability (math problem solving and written expression), attention deficit hyperactivity disorder ("ADHD"), sensory integration dysfunction, a social communication disorder, and asthma. *Id*. The ALJ also found that Claimant's history of staring spells/transient alteration of awareness was not a severe impairment. *Id*.

At step three, the ALJ found that Claimant did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–15. The ALJ also found that Claimant does not have an impairment or combination of impairments that functionally equaled the severity of the Listings. R. 15–18. Specifically, although the ALJ found that Claimant had a marked limitation in acquiring and using information, the ALJ also found that Claimant had less than marked limitations in attending and completing tasks; interacting and relating with others; caring for self; and health and physical well-being; and no limitations in moving about and manipulating objects. *Id*.

Based on the foregoing analysis, the ALJ concluded that Claimant was disabled within the meaning of the Social Security Act since July 29, 2019, the date on which the application was filed. R. 18–19.

The Court has construed Plaintiff's filings liberally. *See Erickson*, 551 U.S. at 94; *Higgs*, 655 F.3d at 340. Plaintiff alleges misrepresentation in a notice issued by the Social Security Administration ("SSA") and, separately, appears to challenge the ALJ's findings at step three. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief*, ECF No. 13.

The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 16.

IV.　**DISCUSSION**

　　A.　**Alleged Misrepresentation**

Plaintiff first argues that a SSA notice misrepresented "the nature of the claim[,]" thereby undermining the ALJ's decision:

> I am writing to express my disagreement with the decision rendered by the Social Security Administration (SSA), as outlined in the notice dated July 25th, 2023.
>
> Upon reviewing the notice, I noted a discrepancy in the language used, particularly in the third paragraph, which appears to misrepresent the nature of the claim. While the initial statement clearly indicates that the claim pertains to my son, the subsequent paragraph consistently refers to "Ms. P[.]," thereby creating confusion regarding the basis of the decision.

*Plaintiff's Brief*, ECF No. 13, PAGED#750.

Although Plaintiff does not provide a specific citation to the record, the Court presumes that this contention refers to the decision of the Appeals Council denying Plaintiff's request for review issued on July 25, 2023, R. 1–6, as that is the only SSA document in the record bearing that date. In reviewing that denial by the Appeals Council, nothing in that document persuades this Court that the SSA misrepresented the claim, or anything else related to this case. *See id*. Accordingly, Plaintiff's challenge in this regard will not serve as a basis to remand this action.

　　B.　**Functional Equivalence**

Construed liberally, *see Erickson*, 551 U.S. at 94; *Higgs*, 655 F.3d at 340, Plaintiff also appears to contend that the Claimant's impairments render him unable to function, which the Court understands as challenging the ALJ's conclusion that the Claimant's impairments do not

10

functionally equal a listed impairment. *See generally Plaintiff's Brief*, ECF No. 13 (arguing, *inter alia*, that Plaintiff's "struggles with concentration, organization, social interaction, communication, and adaptive skills" "significantly impact[] his daily functioning" and "continue to affect his academic and social performance in school"). As previously discussed, in order to be regarded as the functional equivalent of a listed impairment, a child's impairment must result in at least a marked limitation in two of the six functional domains. 20 C.F.R. § 416.926a. The ALJ found that Claimant had a marked limitation in only one domain, *i.e.,* acquiring and using information. R. 16–17. For the following reasons, the Court concludes that this finding enjoys substantial support in the record.

### 1.      Attending and completing tasks

The domain of attending and completing tasks assesses how well a child is able to focus and maintain attention, and how well a child begins, carries through, and finishes activities, including the pace at which the child performs activities and the ease with which the child change them. 20 C.F.R. § 416.926a(h). School-age children (age 6 to attainment of age 12)

> should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). Here, the ALJ found that the Claimant had a less than marked limitation in this domain:

> The claimant has a <u>less than marked</u> limitation in attending and completing tasks. Standardized testing showed signs of ADHD (2F/4 [R. 525]). "It will take him a

> long time" to do schoolwork (Id.). On examination, he appeared "hyperactive" and "expresses impulsivity" (2F/133 [R. 654]). The claimant's fifth grade teacher reported the claimant "needs a lot of assistance and guidance in completing assignments" (16E/7 [R. 302]). Therefore, the claimant has some limitation in this area. However, the claimant began treating with ADHD medication (2F/8 [R. 529]). He reported his medications "helped" (2F/46 [R. 567]). His inclusion teacher reported no more than a slight problem in this domain (4E/4 [R. 170]). Therefore, the totality of the evidence demonstrates the claimant has no more than a less than marked limitation in the functional domain of attending and completing tasks.

R. 17 (emphasis in original). The Court finds no error with the ALJ's consideration in this regard. Other than a generalized assertion that Claimant "struggles with concentration[,]" *Plaintiff's Brief*, ECF No. 13, PAGEID#750, Plaintiff offers no specific argument—nor does she point to any specific evidence—that the ALJ erred in this assessment. *See generally id.*; *see also Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("Lacking any direction. . . as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the plaintiff's] position."); *Hutcheson o/b/o A.M. v. Berryhill*, No. 3:16-CV-2023, 2017 WL 3581675, at *9 (M.D. Pa. Aug. 18, 2017) (finding that the plaintiff "failed to show error" when her briefs advanced "no specific argument" in support of her general challenge to the ALJ's finding in a domain). Notably, as detailed above, the ALJ expressly acknowledged that the evidence supported "some limitation" in this domain. *Id*. (citing R. 302, 525, 654) However, the ALJ explained that the evidence established less than a marked limitation in light of the Claimant's report that medication had "helped" him and his teacher reported no more than a "slight problem" in this domain. *Id*. (citing R. 170, 529, 567). This substantial evidence supports the ALJ's analysis and conclusion that the Claimant had a less than marked impairment in the domain of attending and completing tasks. *See* 20 C.F.R. § 416.926a(h)(2)(iv); SSR 09-1p.

### 2. Interacting and relating with others

The domain of interacting and relating with others assesses how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). When entering school, school-age children "should be able to develop more lasting friendships with children who are" the same age. 20 C.F.R. § 416.926a(i)(2)(iv). Such children "should begin to understand how to work in groups to create projects and solve problems" and "should have an increasing ability to understand another's point of view and to tolerate differences." *Id*. School-age children should also "be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." *Id*. In this case, the ALJ found a less than marked limitation in this domain:

> The claimant has <u>a less than marked</u> limitation in interacting and relating with others. On examination, the claimant appeared "hyperactive" and expresses "impulsivity" (2F/133 [R. 654]). He "does demonstrate language and language processing problems" (3F/6 [R. 685]). His fifth-grade inclusion teacher reported the claimant "has a difficult time interacting with peers his own age" (16E/8 [R. 303]). "He often gets into arguments and disagreements then tries to get the other student in trouble" (Id.). Therefore, the claimant has more than a mild limitation in this area. However, the claimant's classroom teacher reported that "he does not present with any speech articulation concerns (3F/6 [R. 685]). A speech and language valuation showed all expressive, receptive, comprehension, and vocabulary related language skills appeared within normal limits (11E/8 [R. 227]). During testing, the claimant was "friendly, active, and cooperative," "made eye contact", and "took turns in dialogue" (Id.). The claimant's inclusion teacher reported no more than a slight problem in most areas associated with this domain (4E/6 [R. 172]). Therefore, the claimant has no more than a less than marked limitation in the area of interacting and relating with others.

R. 17 (emphasis in original). As with the domain of attending and completing tasks, Plaintiff generally asserts only that Claimant "struggles" with "social interaction" with no citation to the record. *Plaintiff's Brief*, ECF No. 13, PAGEID#750; *see also Atkins*, 2020 WL 1970531, at *4;

*Hutcheson o/b/o A.M.*, 2017 WL 3581675, at *9. The ALJ's finding, with citation to specific evidence, establishes that, although the Claimant had more than a mild limitation in this domain, reports by his teachers, results of speech and language valuations, and his behavior during testing support the ALJ's finding that he had a less than marked limitation in this domain. R. 17 (citing R. 172, 227, 303, 654, 685). *See* 20 C.F.R. § 416.926a(i)(2)(iv); SSR 09-1p.

### 3. Moving about and manipulating objects

The domain of moving about and manipulating objects assesses how a child moves his body from one place to another and how he moves and manipulates things, *i.e.*, gross and fine motor skills. 20 C.F.R. § 416.926a(j). Here, the ALJ found no limitation in this area because Claimant's

> teachers largely reported no problems in this domain (4E/6 [R. 172] and 16E/9 [R. 304]). Physical examination findings are unremarkable, demonstrating normal range of motion and a normal gait (1F/191 [R. 499] and 2F/19-20 [R. 540–41]/75 [R. 596]).

R. 17. Even construing Plaintiff's arguments liberally, *see Erickson*, 551 U.S. at 94; *Higgs*, 655 F.3d at 340, Plaintiff does not appear to challenge this determination. *See generally Plaintiff's Brief*, ECF No. 13. Moreover, substantial evidence supports the ALJ's analysis and finding that Claimant had no limitation in the domain of moving about and manipulating objects. 20 C.F.R. § 416.926a(j)(2)(iv); SSR 09-1p.

### 4. Caring for self

The domain of caring for oneself assesses how well a child maintains a healthy emotional and physical state, including how well the child gets his physical and emotional wants and needs met in appropriate ways; how the child copes with stress and changes in his environment; and whether the child takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). School-age children

> should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. § 416.926a(k)(2)(iv). In this case, the ALJ found a less than marked limitation in this domain:

> The claimant has a less than marked limitation in the domain of caring for self. Here, the claimant's teachers reported he is easily frustrated (2F/4 [R. 525]). On examination, he appeared "hyperactive" and "expresses impulsivity" (2F/133 [R. 654]). He has some difficulty independently completing tasks (16E/6 [R. 301]). Therefore, the claimant has some limitation in this domain. However, the claimant's inclusion teacher reported the claimant has no more than a slight problem in any one area associated with this domain (4E/7 [R. 173]). The claimant's fifth grade teacher reported no problems in this domain (16E/10 [R. 305]). In documentation, the claimant's mother did not report the claimant's impairments affect his ability to help himself and cooperate with others in taking care of his personal needs (3E/10 [R. 164]). Therefore, the claimant has no more than a less than marked limitation in this domain.

R. 17–18. Construing Plaintiff's arguments liberally, *see Erickson*, 551 U.S. at 94; *Higgs*, 655 F.3d at 340, she does not appear to challenge this determination. *See generally Plaintiff's Brief*, ECF No. 13; *see also Atkins*, 2020 WL 1970531, at *4; *Hutcheson o/b/o A.M.*, 2017 WL 3581675, at *9. In any event, the ALJ sufficiently explained, with citation to the record, that while Claimant had some limitation in this domain, the evidence from Claimant's teachers and from Plaintiff herself supported a less than marked limitation in this domain. R. 17–18 (citing R. 164, 173, 301, 305, 525, 654). Accordingly, substantial evidence supports the ALJ's analysis and finding that Claimant had a less than marked limitation in the domain of caring for self. 20 C.F.R. § 416.926a(j)(2)(iv); SSR 09-1p.

### 5. Health and physical well-being

The domain of health and physical well-being considers the cumulative effects of physical or mental impairments and their associated treatments or therapies on the child's functioning that was not considered in the domain of moving about and manipulating objects. 20 C.F.R. § 416.926a(l). Examples of limitations in this domain include the following:

> (i) You have generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s).
>
> (ii) You have somatic complaints related to your impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia).
>
> (iii) You have limitations in your physical functioning because of your treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments).
>
> (iv) You have exacerbations from one impairment or a combination of impairments that interfere with your physical functioning.
>
> (v) You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

20 C.F.R. § 416.926a(l)(4). Here, the ALJ found that Claimant had a less than marked limitation in this domain:

> The claimant has a less than marked limitation in the domain regarding health and physical wellbeing. The record indicates a history of mild intermittent asthma associated with seasonal allergic rhinitis due to pollen (2F/92 [R. 613]). A pulmonary function test was consistent with "moderate obstructive lung disease" (2F/95 [R. 616]). Therefore, the claimant has some limitation in this area. However, physical examination findings are unremarkable, with his lungs repeatedly appearing clear to auscultation bilaterally without evidence of wheezes, rales, or rhonchi (1F/191 [R. 499] and 2F/19-20 [R. 540–41]/75 [R. 496]). An electroencephalogram study was unremarkable (4F [R. 717–18]). Therefore, the claimant has no more than a less than marked limitation in the area of health and physical well-being.

R. 18. This analysis reflects the ALJ's careful consideration of record evidence in determining that the Claimant had a less than marked limitation in this domain. *Id.* Notably, Plaintiff does not appear to challenge—let alone explain—why the ALJ's analysis in this regard was deficient. *See generally Plaintiff's Brief*, ECF No. 13; *see also Atkins*, 2020 WL 1970531, at *4; *Hutcheson o/b/o A.M.*, 2017 WL 3581675, at *9. The Court therefore concludes that the ALJ's analysis and determination that Claimant had a less than marked limitation in the domain of health and physical well-being enjoys substantial support in the record. *See id.*; 20 C.F.R. § 416.926a(l).

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  December 16, 2025                                *s/Norah McCann King*
                                                                          NORAH McCANN KING
                                                              UNITED STATES MAGISTRATE JUDGE